[Civ. No. 42442. Second Dist., Div. Five. Sept. 30, 1974.]

LOUIS FOX et al., Plaintiffs and Appellants, v.
MARJORIE L. DEHN, as Executrix, etc., et al.,
Defendants and Respondents.

## COUNSEL

David S. Smith for Plaintiffs and Appellants.

Tankel, Toll, Strassman, Leavitt & Tigerman and Bert Z. Tigerman for Defendants and Respondents.

## OPINION

**STEPHENS, Acting P. J.**—Appellants Louis Fox and Harold Fox seek reversal of the superior court's order granting respondents' motion for summary judgment. Appellants' action sought damages for breach of contract by decedent, William Dehn. In their pleadings before the superior court, respondents successfully contended that the action (filed more than five months after rejection of appellants' claim by the executrix of decedent's estate) was barred by the statute of limitations. The superior court granted summary judgment on the "statutory ground that the action has no merit and that no triable issue of fact is presented."

### Facts

On appeal, the parties are in substantial agreement as to the following: In October 1969, appellants (who were licensed real estate salesmen) entered into an oral employment agreement with decedent, who was then doing business as a sole proprietor under the name of William Dehn and Associates. Under the terms of the agreement, appellants were to serve as "tract directors" with respect to the sale of real property known as Rancho Tehama Reserve, the sale being supervised by decedent. Their duties included setting up a sales office, handling and supervising all setting-up details and operations of tract sales, making contacts with local people and businesses for good will, attempting to arrange credit with local businesses, meeting and greeting incoming prospects, supervising sales, finalizing sales of other personnel when they were unable to do so, and reevaluating prices of tract lots. The details as to amounts and method of compensation to be paid to appellants are well known to the parties, and for our purposes it suffices to state that generally, in consideration for appellants' performance, compensation was to be made in varying percentages of the sales price of lots as they were sold or as payments thereon were made. In addition, appellants were to be reimbursed for expenses, and the oral agreement was to be reduced to a written contract incorporating its terms. Decedent also represented to appellants that all land concerned in the agreement was to be sold in approximately 14 months from the commencement of the sales. Appellants allege that decedent further advised them that the anticipated total sales price would be $10,000,000.

During the period of appellants' employment with William Dehn and Associates (October 1969 to February 22, 1970), appellants performed some of the activities required of them under the contract and expended $2,000 in preparation of the sales program. However, on February 22,

1970, decedent breached the agreement by failing and/or refusing to reimburse the alleged out-of-pocket expenses amounting to $2,000; failing and/or refusing to pay commissions prospectively owed to appellants under the oral agreement; failing and/or refusing to enter into a written agreement with appellants; and by informing appellants that he would not honor the oral employment contract or carry out its terms.

Dehn died on June 1, 1970, and subsequent to service of notice to creditors, appellants filed a ·claim with the executrix of decedent's estate on August 12, 1970, for damages in the amount of $164,500 allegedly arising from decedent's breach of the employment contract.[1] Appellants' alleged damages derive from their lost opportunity to realize anticipated profits from commissions for the period of February 22, 1970, to the present. The claim was rejected by the executrix and notice of rejection was served on August 18, 1970. On January 22, 1971, more than five months after rejection of their claim by respondents, appellants filed a complaint for breach of contract. At the time the complaint was filed, the bulk of the sales of Rancho Tehama Reserve property had not been made, with the projected date of final sales being estimated to be between March and June of 1972. The sole proprietorship of William Dehn and Associates ceased with the death of Dehn on June 1, 1970.

### Discussion

■ The appeal presents a single issue: Was the action filed by appellants on January 22, 1971, barred by the statute of limitations as set forth in Probate Code section 714?[2]

Determination of this question depends upon whether the termination of the contract resulted in immediate damages or damages only as sales were made. We conclude that the alleged damages were immediate and that the amount was ascertainable and "due" on February 22, the date of termination of the agreement.

As stated by the court in *City of Los Angeles* v. *McNeil,* 160 Cal.App. 2d Supp. 867, 871 [326 P.2d 29], "[t]he term 'due' should be construed

---

[1] An additional claim was made in the sum of $2,000 for "monies advanced," which was also rejected.

[2] Probate Code section 714 provides in pertinent part: "When a claim is rejected either by the executor or administrator or by the judge, written notice of such rejection shall be given by the executor or administrator to the holder of the claim or to the person filing or presenting it, and *the holder must bring suit in the proper court* against the executor or administrator, *within three months after the date of service of such notice if the claim is then due, or, if not, within two months after it becomes due;* otherwise the claim shall be forever barred." (Italics added.)

in the light of the purpose of the statute in which it is found. It is a basic objective of probate to settle the estates of decedents at the earliest possible time." In respect to section 714, the specific object of the "statutory requirement of presentation and rejection of claims against estates, as a condition precedent to commencement of suits upon them, is to save to estates of deceased persons the costs and expenses of useless suits, —suits to recover what would have been allowed and paid by the executor and administrator without suit." (*Radar* v. *Rogers,* 49 Cal.2d 243, 249 [317 P.2d 17]; *Preston* v. *Knapp,* 85 Cal. 559, 561 [24 P. 811].)

In the present case we are concerned with the commissions which would have been earned *if* appellants' contract with decedent had been fully performed by all parties. Here, our focus is on the remedy of appellants which arose when decedent, on February 22, 1970, committed a breach of the contract by completely repudiating his obligations and preventing performance under the contract. ■ The interpretation of the word "due" should reflect the earliest instance at which a claim matures.[3] Appellants rely on language in *Bank of America etc. Assn.* v. *Gillett,* 36 Cal.App.2d 453, 455 [97 P.2d 875] that "a debt becomes due when it reaches the date upon which payment may be required." *Gillett* does not sustain appellants' claim. *Gillett* involved a claim after default on a promissory note secured by a deed of trust upon real property; the defendants argued that the claim was not due because a deficiency judgment had yet to be rendered. The court found that the claim was one which was "due," stating that a "deficiency judgment is one determining the amount 'collectible' as distinguished from the amount due." (*Id.,* at p. 456.)

In contrast, claims which have been treated as "not due" and which fall within the two-month provision of section 714, have been for the most part contingent in nature.[4] Courts have denied immediate payment in these cases until the condition which would mandate payment has in fact occurred where there was the possibility that such condition would not occur. (*Brooks* v. *Lawson,* 136 Cal. 10 [68 P. 97]; *Newhall* v. *Newhall,* 227 Cal.

---

[3]As stated by Condee: "Statutes of limitation are for the protection of debtors against the assertion of claims, the merits of which may become difficult or impossible of ascertainment through great lapse of time." (1 Condee, Probate Court Practice (2d ed. 1964) § 755; see also *Estate of Jacobson,* 56 Cal.App.2d 255 [132 P.2d 229].)

[4]In *Morse* v. *Steele,* 132 Cal. 456, 457-458 [64 P. 690], the court stated that a "contingent claim—is a claim 'not due' within the purview of Section 1498" (now Prob. Code, § 714). The only case to distinguish between contingent claims and those not yet due was *Verdier* v. *Roach,* 96 Cal. 467 [31 P. 554], on the basis that a contingent claim is a mere possibility while "one not due" is certain as to amount and the date it is to become due.

App.2d 800 [39 Cal.Rptr. 144]; *Southern Pacific Co.* v. *Catucci,* 47 Cal. App.2d 596 [118 P.2d 494]; *Joost* v. *Castel,* 33 Cal.App.2d 138 [91 P.2d 172].) In *Miller* v. *Miller,* 171 Cal. 269, 271 [152 P. 728], the court stated that "it is distinctly held that although it is perfectly proper to present a contingent claim before it becomes due, an action thereon may not be maintained until after the happening of the contingency. . . ."

In his treatise on probate practice, Condee states: "Whether or not a claim or a portion thereof is contingent may be tested by this question: Could the decedent, at the moment of death, have been sued for the full amount of the claim?" (1 Condee, Probate Court Practice (2d ed. 1964) § 1784.) It is appellants' contention that decedent's breach constituted an anticipatory breach as a result of which appellants could elect to treat the repudiation as a breach and sue immediately for damages, or to treat the contract as still binding and wait until the time for performance arrived before bringing suit.[5] Appellants assert that as this right of election belongs to them, not to respondents, they have elected to treat the contract as still binding and have awaited the time for performance before initiating suit. The answer to this contention is twofold: the breach was not anticipatory and therefore did not give rise to any election; and even if the breach were anticipatory, appellants made their election when they asserted their claim in probate to be one for breach of contract.

An essential element of an anticipatory breach is that repudiation by the promisor occur before his performance is due. (*Gold Min. & Water Co.* v. *Swinerton,* 23 Cal.2d 19 [142 P.2d 22]; 12 Cal.Jur.2d, Contracts, § 245, at p. 471.) However, where there is a partial breach of the contract followed by a repudiation of the contract by the promisor, although the breach is total, it is not characterized as an anticipatory breach as to which an election would lie. (*Gold Min. & Water Co.* v. *Swinerton, supra; Atkinson* v. *District Bond Co., supra,* 5 Cal.App.2d 738.) In the present case, decedent was under an obligation to reimburse appellants for expenses incurred in preparation for the sale of the Rancho Tehama property and to reduce the oral agreement to writing. Such expenses were incurred by appellants with the knowledge of decedent, and appellants made continuous requests for payment and for a written contract. Although no commissions could be paid as property had not been sold before February 22, 1970, the reimbursement for expenses and the preparation of a written contract had both become due when the promisor, decedent, telephoned appellants and informed them that their employment with Dehn Associates was ter-

---

[5]Appellants cite *Atkinson* v. *District Bond Co.,* 5 Cal.App.2d 738, 743 [43 P.2d 867] and *Robinson* v. *Raquet,* 1 Cal.App.2d 533, 542 [36 P.2d 821] as authority for this proposition.

minated. As performance was required by decedent when he refused to comply with his duties under the oral agreement, the breach cannot be characterized as anticipatory.[6] Decedent's breach has been correctly characterized by respondents: a partial breach followed by a repudiation which made the breach total on February 22, 1970, at which time a cause of action for damages immediately arose.

■ Although a creditor must file his claim against an estate, whether it is actual, contingent, or future (*Verdier* v. *Roach,* 96 Cal. 467 [31 P. 554]; *Southern Pacific Co.* v. *Catucci,* 47 Cal.App.2d 596 [118 P.2d 494]), within four months after the estate publishes its notice to creditors to prevent the claim from being barred (Prob. Code, § 700), it is equally true that where there are inconsistent remedies involved as to a claim presented to an executor, the claimant will be deemed to have made an election and waived the other available remedies depending on the remedy he seeks from the estate. (*Holt Manufacturing Co.* v. *Ewing,* 109 Cal. 353 [42 P. 435]; *Smith* v. *Greenfield State Bank,* 222 Cal.App.2d 869 [35 Cal.Rptr. 579].) Both *Holt* and *Smith* were concerned with conditional sales contracts where the choice of remedies was between suing for the entire balance due on the contract or taking possession of property which was the subject matter of the contract. Appellants made an election to treat the contract as breached in August 1970 when they filed their claim with the estate.

■ Appellants also argue that their agreement with decedent is severable and as such the statute of limitations only began to run at the time of breach as to each obligation.[7] *Gold Min. & Water Co.* v. *Swinerton, supra* (at p. 30) answers this contention. There, the court stated that "Where the acts to be performed by the promisor are connected, and the thing to be accomplished by the contract is an entirety, the breach may be total where there is a partial breach coupled with repudiation . . ." Where the acts required are indivisible, continuous, and not separable, the breach is total. (*Ibid.*) As pointed out in *Gold Min. & Water Co.,* where such continuous acts are required and where the contract is viewed as an entire obligation, the fact that compensation is made on a monthly basis with no implication that one payment is severable from another causes such a

---

[6]*Atkinson,* relied upon by appellants, is not to the contrary. There, plaintiffs agreed to bid for certain street improvement work and to perform the work if a contract was awarded to them; defendants in turn agreed to buy the warrant and bonds issued in payment of the work. Defendants repudiated the contract one week after the contract was entered and prior to plaintiffs' bidding on the street improvement contract. (5 Cal.App.2d 738, 740.)

[7]Appellants cite *Sweet* v. *Watson's Nursery,* 23 Cal.App.2d 379 [73 P.2d 284] as authority.

promise to be "merely a specification of the time for paying. . . . It is not like the case of money payable in fixed installments." (*Ibid.*) In this case, continuous performance was required by appellants up to the time all of the Rancho Tehama properties were sold; payment of commissions on a percentage basis was merely a method devised and found adequate for compensating appellants for their services.[8]

██ We have concluded that decedent's action of February 22, 1970, constituted a total breach of contract and that appellants' cause of action was not one arising from an anticipatory breach. At what point then is a claim for breach of contract "due" so as to set the statute of limitations in motion? ██ In general, where there has been a willful and wrongful termination of a contract and prevention of the other party's performance, an action lies to recover all damages sustained by the injured party (12 Cal.Jur.2d, Contracts, § 244 at p. 470); the statute of limitations begins to run against such a cause of action for breach of contract at the time of the breach. (*Baker* v. *Joseph,* 16 Cal. 173.) In respect to the general statute of limitations for an action founded on a written instrument, the court in *Waxman* v. *Citizens Nat. Trust & Sav. Bk.,* 123 Cal.App.2d 145, 149 [266 P.2d 48] stated: "The statute did not begin to run until the cause of action accrued. [Citations.] A cause of action invariably accrues where there is a remedy available. [Citations.] Ordinarily, a cause of action for breach of contract accrues on the failure of the promisor to do the thing contracted for at the time and in the manner contracted." In *Maguire* v. *Hibernia S. & L. Soc.,* 23 Cal.2d 719, 733 [146 P.2d 673, 151 A.L.R. 1062], this principle was reiterated: "It is the general rule that a cause of action accrues when a suit may be maintained thereon, and the statute of limitations then begins to run."

██ Although the cases use conditional words such as "may" and "ordinarily" when designating the time when a cause of action for breach of contract arises, as the construction and purpose of Probate Code section 714 are aimed at resolving determinable claims as soon as possible, and as there was a total breach of contract on February 22, 1970, appellants' claim then became "due" within the meaning of section 714. As a suit "may" have been maintained on February 22, 1970, appellants' claim was one due on presentation to respondents,[9] and it was at the time of rejection

---

[8]This conclusion also disposes of appellants' contention that performance of acts under the contract were not connected so as to make breach of such an obligation only partial, even if there were unequivocal repudiation of the whole contract (citing *Riess* v. *Murchison* (9th Cir. 1964) 329 F.2d 635.

[9]In *Maurer* v. *King,* 127 Cal. 114, 116 [59 P. 290], the court stated that "[i]f a claim is one which would become due upon presentation, it is a claim then due within the meaning of this statute." (Former Code Civ. Proc., § 1498, now Prob. Code, § 714.)

that the three months' statute of limitations provided for by Probate Code section 714 began to run. Appellants' performance having been prevented, their anticipated profits under the contract served only as a means to calculate their measure of damages for the breach of contract which occurred. As appellants brought their action for breach of contract more than five months after their claim was rejected by decedent's executrix, and as their claim was "due" on August 18, 1970, their suit was not timely filed.

The order of summary judgment in favor of respondents is proper where, as here, the affidavits in support of the motion provide sufficient evidence to support a finding that appellants' action was barred by the statute of limitations. (Code Civ. Proc., § 437c); *Graham v. Bank of California,* 197 Cal.App.2d 438 [17 Cal.Rptr. 279].)

The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.