Filed 4/25/14  Sznyter v.Spun.com Inc. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


EDWARD W. SZNYTER,

     Plaintiff, Appellant, Cross-Respondent,

     v.

SPUN.COM, INC.,

     Defendant, Respondent, Cross-Appellant.

D061832


(Super. Ct. No. GIC876744)


APPEAL from a judgment of the Superior Court of San Diego County, Luis R. Vargas, Judge.  (Retired judge of the San Diego Sup. Ct.)  Affirmed.

Edward W. Sznyter, in pro. per., for Plaintiff, Appellant and Cross-Respondent.

Business Legal Partners and Gregg A. Rapoport for Defendant, Respondent and Cross-Appellant.


Edward W. Sznyter appeals from a judgment in favor of Spun.com, Inc. (Spun) on his breach of contract claim.  He contends the trial court erred in (1) denying his summary judgment motion based on a finding that there was a triable issue of fact

concerning the defense of impossibility, (2) finding his claim for breach of contract was barred by the statute of limitations, (3) allowing Spun to amend its answer to add an affirmative defense, and (4) finding that Spun's performance of the contract was excused due to impossibility. Spun cross-appeals, arguing the trial court erred by (1) denying its motion to dismiss for delay in prosecution, and (2) denying its motion for attorney fees. We reject these arguments and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

We summarize the factual background largely from the trial court's statement of decision as the facts are undisputed.

In December 1999, William Keenan, an officer of KidsOnLine.com, Inc. (KidsOnLine), contacted Sznyter to purchase Sznyter's domain name, "Swap.com." After negotiations, Sznyter and KidsOnLine agreed that Sznyter would transfer the domain name in exchange for $100,000 plus 300,000 shares of KidsOnLine's common stock. KidsOnLine also agreed that it would offer to repurchase the stock for $150,000 on or before the contract's third anniversary date.

After obtaining the domain name, KidsOnLine renamed itself "Swap.com, Inc." That company later became Spun. Sznyter remained a shareholder of the corporation through the name changes.

By December 2001, Spun had become insolvent. Thus, in June 2002, it effectuated a merger under Delaware law, pursuant to which all existing stock shares were canceled for nominal consideration. Spun mailed a notice of the merger to its

2

shareholders, which informed them of their rights under the merger agreement and Delaware law to seek an appraisal of their shares.

In December 2002, Sznyter called Keenan to ask whether Spun planned to repurchase Sznyter's stock shares. Keenan informed Sznyter that there would be no repurchase offer because of the merger that had taken place. Sznyter demanded that Spun repurchase his stock.

In December 2006, Sznyter sued Spun for breach of contract and intentional interference with contractual relations. He alleged that the compensation offered to him as a result of the merger was inadequate and that Spun was required to pay him $150,000 under the contract.

Spun moved for summary judgment or alternatively summary adjudication, arguing that performance of the contract was impossible due to the corporate merger and Sznyter's claims were barred by the statute of limitations. Sznyter opposed Spun's motion and filed a cross-motion for summary judgment. The trial court denied both motions, finding there were triable issues of fact as to whether Spun's performance of the contract was excused by impossibility and regarding accrual of the statute of limitations.

At a trial readiness hearing in April 2008, the trial court set the trial to commence the next month. Shortly after that hearing, Spun moved to amend its answer to include affirmative defenses of excuse of performance based on impossibility, impracticability and illegality, failure of consideration, and frustration of purpose. Before the trial court heard Spun's motion, Sznyter moved to disqualify the trial judge. The trial court

informed the parties that the trial could not proceed until the disqualification issue was resolved.

In June 2008, the trial court denied Sznyter's disqualification motion. Thereafter, no proceedings took place in the action until mid-2011. At that time, Sznyter requested that the court set the case for trial. Spun moved to dismiss the action based on Sznyter's delay in prosecution. The trial court denied Spun's motion to dismiss and set the case for trial. The trial court also granted Spun's renewed request to amend its answer, which was unopposed.

The case proceeded to a bench trial. At the conclusion of Sznyter's evidence, Spun moved for judgment under Code of Civil Procedure section 631.8. (Undesignated statutory references are to the Code of Civil Procedure.) The trial court granted the motion and entered judgment in favor of Spun. In its statement of decision, the trial court explained that the merger excused Spun from its obligation to repurchase Sznyter's stock shares. The court also found that Sznyter's claims were barred by the statute of limitations because they accrued when the merger took place in June 2002, but he waited until December 2006 to file suit.

### DISCUSSION

#### I. Sznyter's Appeal

A. Summary Judgment Motion

Sznyter argues the trial court erred in denying his motion for summary judgment based on a finding that there was a triable issue of fact concerning the defense of

4

impossibility because that defense was not asserted in Spun's answer. We reject this argument.

"'[S]ection 904.1 specifies those orders and judgments of the superior court from which an appeal may be taken. An order denying summary judgment is not one of these.'" (*Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1010.) "'An order denying summary judgment or granting or denying summary adjudication is reviewable only by a petition for writ of mandamus. [§ 437c(m); [citations]] [¶] There is generally no basis for appeal after trial; erroneous denial of summary judgment is generally harmless error after a full trial covering the same issues. [Citation.].'" (*Id.* at pp. 1010-1011.)

Here, Sznyter's arguments concerning the denial of his summary judgment motion are not proper in this appeal. First, the order denying summary judgment is not appealable. Second, Sznyter's arguments concerning Spun's defenses of impossibility and the statute of limitations were addressed at trial. Accordingly, even if the denial of the summary judgment was improper, the error is harmless because there was a trial on the same issues.

B. Statute of Limitations

Sznyter contends the trial court erred in finding his claim for breach of contract was barred by the statute of limitations. We disagree.

Preliminarily, we note that Sznyter challenges the trial court's decision on the statute of limitations in relation to the denial of his summary judgment motion and the

court's decision after the bench trial. For the reasons discussed earlier, we do not address the trial court's denial of Sznyter's summary judgment motion. (*Ante*, Part I.A.)

Generally, actions for breach of a written contract are subject to a four-year statute of limitations. (§ 337.) A limitations period does not begin to run until the cause of action accrues, that is, when all essential elements are present and a claim becomes legally actionable. (E.g., § 312; *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 487.) A cause of action for breach of contract accrues, and thus the limitations period starts to run, at the time of breach. (*Cochran v. Cochran* (1997) 56 Cal.App.4th 1115, 1120.)

Here, the trial court found that the statute of limitations began to run in June 2002, the date of the merger. Sznyter contends the statute of limitations did not begin to run until December 2002, the expiration of the three-year period in which Spun was required to repurchase his stock shares. He argues that Spun's merger constituted an anticipatory breach of his contract whereas the actual breach did not occur until Spun's performance was due under the contract.

Sznyter mischaracterizes the June 2002 merger as an anticipatory breach. As a result of the merger, Sznyter's common stock shares were canceled. Thus, the merger completely prevented future performance of Sznyter's contract. Where continued performance of a contract is not possible, the breach is total and does not give rise to an election between treating the repudiation as a breach and suing immediately for damages or treating the contract as binding and waiting until the time for performance arrived before bringing suit. (See *Fox v. Dehn* (1974) 42 Cal.App.3d 165, 171.) Where, as here,

6

Sznyter's claims completely accrued at the time of the merger, yet he waited four and half years to file suit, his breach of contract claim was time barred.

C.  Amendment to Answer

Sznyter argues the trial court abused its discretion by allowing Spun to amend its answer to add an affirmative defense.  We disagree.

The court may allow amendment of any pleading "upon any terms as may be just." (§ 473.)  "'While a motion to permit an amendment to a pleading . . . is one addressed to the discretion of the court, the exercise of this discretion must be sound and reasonable and not arbitrary or capricious.  [Citations.]  And it is a rare case in which "a court will be justified in refusing a party leave to amend his pleadings so that he may properly present his case."  [Citations.]  If the motion to amend is timely made and the granting of the motion will not prejudice the opposing party, it is error to refuse permission to amend and where the refusal also results in a party being deprived of the right to assert a meritorious . . . defense, it is not only error but an abuse of discretion.  [Citations.]'"  (*Redevelopment Agency v. Herrold* (1978) 86 Cal.App.3d 1024, 1031, quoting *Morgan v. Superior Court* (1959) 172 Cal.App.2d 527, 530.)

Here, Sznyter complains that the trial court abused its discretion because it allowed Spun to amend its answer on the threshold of trial.  We do not see this as an abuse of discretion, especially as Sznyter has not shown he was prejudiced by the amendment.  This is not a case where the plaintiff was surprised by the addition of a defense at trial and did not have an opportunity to sufficiently rebut the defense.  Rather, Sznyter was on notice of Spun's impossibility defense as late as 2008 when it moved for

7

summary judgment on that basis.  Despite Sznyter's knowledge of Spun's defense, he did not oppose Spun's motion for leave to amend its answer.  Under these circumstances, we conclude the trial court acted well within its discretion in permitting the amendment.

D.  Defense of Impossibility

Sznyter argues the trial court erred in finding that Spun's performance of the contract was excused due to impossibility.  Specifically, he contends Spun cannot be excused from performance of a contract by an impossibility that it intentionally created.  We reject this argument.

If it is impossible for a party to a contract to perform, then his or her performance is excused.  (*Oosten v. Hay Haulers Etc. Union* (1955) 45 Cal.2d 784, 788.) "Impossibility means not only strict impossibility but also impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved.  [Citation.]" (*Board of Supervisors v. McMahon* (1990) 219 Cal.App.3d 286, 299-300.)  However, "[a] person cannot take advantage of his or her own act or omission to escape liability; if the person prevents or makes impossible the performance or happening of a condition precedent, the condition is excused."  (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 821, pp. 910-911, and cases cited; italics omitted.)  "Of course, if the contract expressly allows the defendant's act that prevents performance of the condition, the plaintiff has no cause for complaint, because he or she has assumed the risk."  (*Ibid*.)

Here, Sznyter's stock shares were canceled as a result of the June 2002 merger. Sznyter does not contend that the merger was unlawful.  Instead, without citing to any persuasive authority, he argues that Spun cannot rely on the defense of impossibility

8

because it could have repurchased the shares before the merger, it caused the impossibility, and it knew at the time it entered into the contract that it could destroy Sznyter's shares.

In his argument, Sznyter fails to recognize that there is nothing in his contract with Spun that required it to repurchase his stock before the merger. Indeed, at trial, Sznyter admitted that Spun had no obligation under the contract to repurchase his shares until the third anniversary date. By that time, Spun was insolvent. Moreover, at the time Sznyter entered into the contract, he understood that the company could fail and go through a merger. Accordingly, he assumed the risk that his stock would be canceled. (1 Witkin, *supra*, Contracts, § 821, pp. 910-911; see also *Charpentier v. Los Angeles Rams Football Co.* (1999) 75 Cal.App.4th 301, 311.) The cancelation rendered it impossible for Spun to repurchase Sznyter's stock shares and thereby excused its performance.

II. Spun's Appeal

A. Motion to Dismiss for Delay in Prosecution

Spun argues the trial court erred in denying its motion to dismiss for delay in prosecution. This argument is essentially a protective cross-appeal as Spun prevailed at trial.

In light of our affirmance of the trial court's judgment, Spun's argument concerning the court's ruling on its motion to dismiss for delay in prosecution is moot. Accordingly, we need not address the merits of the argument. (*Hewlett v. Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 510, 546 [dismissing protective cross-appeal as moot upon affirmance of opposing party's appeal].)

9

B.  Attorney Fees

Spun argues the trial court erred in denying its motion for attorney fees. Specifically, Spun contends it is entitled to fees under the merger agreement because Sznyter was a third party beneficiary and as such would have been entitled to fees if he prevailed in the action.  We reject this argument.

Attorney fees can be awarded as costs to the prevailing party when authorized by contract.  (§§ 1021, 1033.5, subd. (a)(10)(A); *Santisas v. Goodin* (1998) 17 Cal.4th 599, 607, fn. 4.)  Ordinarily, such fees are awarded only in an action between the parties to the contract.  (*Super 7 Motel Associates v. Wang* (1993) 16 Cal.App.4th 541, 544-545.)  In some circumstances, however, fees can be awarded in an action between a party to the contract and a nonparty.  (*Id.* at p. 545.)

An intended beneficiary who is not a party to the contract can enforce the contract. (Civ. Code, § 1559.)  However, a third party cannot enforce a covenant not made for its benefit.  (*Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937, 944.)  For example, an attorney fee clause that does not create an obligation to or for the benefit of a third party cannot support an award of attorney fees to the third party.  (*Sweat v. Hollister* (1995) 37 Cal.App.4th 603, 615-616.)

The interpretation of a contract is a question of law that we review de novo when the meaning does not turn on extrinsic evidence.  (*Parsons v. Bristol Development Co*. (1965) 62 Cal.2d 861, 865-866; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 799.)  The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties.  (Civ. Code, § 1636.)  We ascertain that intention by considering

10

the contract as a whole rather than interpreting a provision in isolation. (Civ. Code, § 1641.) The circumstances in which a contract is made are relevant to establishing its meaning unless the words are susceptible to only one interpretation. (Civ. Code, § 1647; § 1860; *Nish Noroian Farms v. Agricultural Labor Relations Bd*. (1984) 35 Cal.3d 726, 735.)

Here, we agree with the trial court that this action was not based on the merger agreement. Sznyter was not seeking to enforce or invalidate any provision of the merger agreement. Instead, he was seeking to enforce the terms of his contract with Spun. That contract did not contain an attorney fee provision. Thus, the action was not "on a contract" which provided for the recovery of attorney fees within the meaning of Civil Code section 1717.

Moreover, even if the action did relate to the merger agreement, there is no indication that the contracting parties intended to create an obligation to pay attorney fees to a third party. The attorney fees provision in the merger agreement merely provided the following: "If any action or proceeding relating to this Agreement or the enforcement of any provision of this Agreement is brought against any party hereto, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs and disbursements." Reading this provision in the context of the whole agreement, we conclude it did not create an obligation to or for the benefit of Sznyter and cannot support an award of attorney fees to Spun.

11

DISPOSITION

The judgment is affirmed.  Spun is entitled to its costs on appeal.


McINTYRE, J.

WE CONCUR:

HALLER, Acting P. J.

O'ROURKE, J.